```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
GABRIELLA BLASETTI,                                                    :
                                                                       :
                                Plaintiff,                             :
                                                                       :           21 Civ. 7540 (JPC) (KHP)
                -v-                                                    :
                                                                       :           OPINION AND ORDER
SCHINDLER ELEVATOR CORPORATION,                                        :
                                                                       :
                                Defendant.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

      This negligence action concerns injuries sustained by Plaintiff Gabriella Blasetti when she tripped and fell while exiting a misleveled elevator at Montefiore Medical Center. Blasetti alleges that Defendant Schindler Elevator Corporation ("Schindler"), the company exclusively responsible for servicing the hospital's elevators, was negligent in their maintenance of the subject elevator and so caused her accident. As discovery on damages has been deferred, Schindler now moves for summary judgment only on the issue of liability, arguing that Blasetti cannot prevail on her claim whether under a traditional negligence theory or under the doctrine of *res ipsa loquitur*. For the reasons that follow, the Court grants Schindler's motion for summary judgment to the extent Blasetti's claim is based on a traditional negligence theory, but denies the motion as to the applicability of the *res ipsa loquitur* doctrine.

## I. Background

**A.     Facts[1]**

### 1.     The Accident

At around 7:00 a.m. on March 24, 2021, Blasetti, an employee at Montefiore Medical Center in the Bronx, tripped and fell while exiting a misleveled elevator on the seventh floor of the hospital.  Deft. 56.1 Stmt. ¶¶ 1, 2, 4; *see* Bryan Declaration, Exh. E ("Blasetti Dep. Tr.") at 15:12-16:18 (describing her employment at the hospital), 22:11-23:3 (stating the date and time of the accident); *see also* Dkt. 1-1 ("Complaint") ¶ 16.  Blasetti did not notice anything out of the ordinary with the elevator before her fall.  Deft. 56.1 Stmt. ¶ 3; Blasetti Dep. Tr. at 61:9-11.  Nor did she "make any observations of the ground" as she was walking out of the elevator.  Blasetti Dep. Tr. at 38:7-12.  After she fell, however, she observed that the floor of the elevator was not level with the floor of the hospital, estimating a height differential of three to four inches.  *Id.* at 36:4-19; *see also* Bryan Declaration, Exhs. O ("Halpern Dep. Tr.") at 14:13-21 (Schindler's elevator expert testifying that, based on his review of the surveillance video of Blasetti's accident, the elevator was misleveled by about two or three inches), P ("Carrajat Dep. Tr.") at 51:4-6 (Blasetti's elevator expert testifying that he was "looking at a video showing an elevator mis[]level [by] 3 to 4 inches").

---

[1] The following facts are drawn from Schindler's statement of material facts pursuant to Local Civil Rule 56.1(a), Dkt. 51 ("Deft. 56.1 Stmt."), Blasetti's response to Schindler's statement of material facts pursuant to Local Civil Rule 56.1(b), Dkt. 56 ("Pl. 56.1 Counter Stmt."), and the declarations submitted in support of and in opposition to Schindler's motion for summary judgment, as well as the exhibits attached thereto, Dkts. 48 ("Bryan Declaration"), 54 ("Pardo Declaration").  Unless otherwise noted, the Court cites to only Schindler's Rule 56.1 Statement or Blasetti's Rule 56.1 Counter Statement where the parties do not dispute the fact, the adverse party has offered no admissible evidence to refute that fact, or the adverse party simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

2.      **Elevator Maintenance and Inspection Records**

Schindler was the elevator maintenance contractor at Montefiore Medical Center at the time of the accident. Deft. 56.1 Stmt. ¶ 12; *see also* Bryan Declaration, Exh. F ("Maintenance Agreement"). Pursuant to Schindler's Elevator Preventative Maintenance Agreement with Montefiore, Schindler was required to perform a minimum of weekly scheduled inspections (or a minimum of forty-eight inspections per year) that entailed checking the leveling of the elevators, as well as cleaning and inspecting the controller, selectors, relays, connectors, and contacts, *see* Maintenance Agreement at 13—items which "can affect the leveling of the elevator," Halpern Dep. Tr. at 43:12-17. The record, however, lacks evidence that these inspections were performed with the frequency required under the Agreement. *See id.* at 42:7-43:11; *see also* Bryan Declaration, Exh. L ("Bliss Dep. Tr.") at 16:4-12 (Schindler's resident mechanic testifying that in 2021, regularly-scheduled maintenance on the subject elevator was performed "three to four times" at the minimum and "possibly more").

Between October 20, 2020, and March 15, 2021, Chris Bliss, Schindler's resident evening-shift mechanic for the hospital, performed routine preventative maintenance on the subject elevator at least ten times, for a total of 23.5 hours of maintenance work. Deft. 56.1 Stmt. ¶ 13; *see also* Bryan Declaration, Exhs. G (preventative maintenance tickets), M ("Halpern Report") at 4. Bliss testified that he had no independent recollection of the maintenance he performed on the subject elevator at those times. Bliss Dep. Tr. at 65:13-24, 67:4-7, 70:8-11, 71:14-17, 72:2-5, 72:16-22, 73:4-6, 73:16-18. But he explained that such maintenance would typically entail "looking for any issues, such as leveling, such as the doors not working properly, checking the fire safety system to make sure it works properly, making sure the buttons all line up, nothing is stuck or jammed, checking the motor room for dirt, for . . . any smells that are something burning or something out

of place or if the ropes are throwing dust or anything, things like that, general and visual maintenance." *Id.* at 64:10-20.

There is no question that the subject elevator historically had been in subpar condition. It failed routine inspections conducted by the New York City Department of Buildings ("NYC DOB") every year between 2010 and 2020, except in 2015 and 2017. Pardo Declaration, Exh. A, Exh. 1 ("Carrajat Report") at 4; Pardo Declaration, Exh. C (NYC DOB portal records). And it also failed its annual "Category 1" inspections—which Blasetti's elevator expert described as "relatively short" "visual inspection[s]" that are "conducted normally by the elevator company" and "witnessed by a third party," Carrajat Dep. Tr. at 32:3-21—every year between 2012 and 2018. Carrajat Report at 4; Pardo Declaration, Exh. C.[2]

Nevertheless, the subject elevator passed its annual Category 1 inspection both on March 22, 2020, and on April 21, 2021. Deft. 56.1 Stmt. ¶¶ 20, 21; Bryan Declaration, Exhs. I (report from inspection on March 22, 2020), J (report from inspection on April 21, 2020). The elevator also passed a routine inspection test conducted by the NYC DOB on March 12, 2021. Deft. 56.1 Stmt. ¶ 22; Bryan Declaration, Exh. K (NYC DOB webpage showing no violation as to the subject elevator on that date). Moreover, in the year leading up to the date of the accident, only one service call regarding the subject elevator was recorded; that June 12, 2020 call concerned a passenger's entrapment in the subject elevator, which was stuck on an unknown floor. Deft. 56.1 Stmt. ¶ 23; Pl. 56.1 Counter Stmt. ¶ 23; Carrajat Dep. Tr. at 92:14-93:5. Although there are no documented instances of the subject elevator being misleveled before Blasetti's accident, Deft. 56.1 Stmt. ¶ 24,

---

[2] Blasetti's elevator expert further stated in his report that there were "no recorded Category One tests for 2019, 2020 or 2021." Carrajat Report at 4. At his deposition, however, he was presented with the Category 1 inspection reports for the subject elevator for 2020 and 2021, and he agreed that those reports indicated that the subject elevator was "found to be satisfactory" for those two years. Carrajat Dep. Tr. at 30:17-31:24; *see also id.* at 91:6-92:5.

according to Bliss, not every problem with an elevator was necessarily recorded, given that there were resident mechanics regularly on site who could address the issue immediately, Bliss Dep. Tr. at 60:18-61:14.  Bliss further testified, however, that it was "very rare that someone would tell [a mechanic] there is an issue that wasn't recorded already." *Id.* at 61:15-20.  And Blasetti, who had at the time of her accident worked at the hospital for roughly seven years and had ridden the subject elevator more than one hundred times, Deft. 56.1 Stmt. ¶ 8, testified that she was unaware of any prior instances of the elevator being misleveled or of any other problems with the elevator, *id.* ¶¶ 9, 10; *see also* Blasetti Dep. Tr. at 32:21-24.

### 3.     Expert Testimony

As earlier alluded to, Blasetti proffers as an expert Patrick A. Carrajat, an elevator consultant who has testified at trial over 120 times.  Carrajat Report at 1; *see also* Carrajat Dep. Tr. at 22:17-24.  After reviewing the deposition testimony, Schindler's service records and its contract with the hospital, and videos of the accident, as well as performing a site examination of the subject elevator on November 3, 2022, Carrajat concluded that "[t]he lack of detailed records showing the specific items of maintenance and repair performed on the elevator in question fails to show that [Schindler] conducted a reasonable inspection or maintenance of the subject elevator, which would have enabled [Schindler] to discover and remedy the defect involving the malfunctioning of the elevator."  Carrajat Report at 1-3.  As to the misleveling of the elevator, he explained that "[t]he most common causes are a sensor failure, a loss of position, a door lock strike and door zone device malfunction," all of which "are devices that are subject to regular examination, maintenance, adjustment and replacement by the service provider."  *Id.* at 5.  He further opined that "an elevator does not mis[]level by more than [a] ½ inch in its normal operation absent negligence in its mainten[an]ce, inspection and repair."  *Id.*

5

On the other hand, Schindler's proffered expert, Jon Halpern, a professional engineer with more than four decades of experience "in the design, installation, modernization, and the maintenance of elevators and escalators," Halpern Report at 1, opined that "the subject elevator was maintained on a regular and systematic basis in accordance with industry standards," *id.* at 3, that Schindler "had no prior notice of a leveling problem with the subject elevator," *id.* at 4, and that "an elevator can mis[]level even when properly maintained," *id.* at 5. As to potential causes for misleveling, Halpern explained that "[a] sensor or a drive component can fail spontaneously, and the power can dip momentarily that can cause a mis[]leveling." *Id.*

**B.     Procedural History**

In June 2021, Blasetti commenced this action in New York Supreme Court, Bronx County, alleging that she sustained "serious and severe permanent and personal injuries" and charging Schindler with negligence in its maintenance of the subject elevator. Complaint ¶ 17. Schindler removed the action to this Court on September 9, 2021, Dkt. 1 (notice of removal), and soon thereafter the undersigned referred the case to the Honorable Katharine H. Parker for general pretrial supervision, Dkt. 9. The parties proceeded with discovery as to the issue of liability with discovery related to damages deferred, given that Blasetti's course of treatment hinged on determinations in a Worker's Compensation Board hearing, which had been adjourned several times. *See* Dkts. 20 (the parties' joint status letter explaining that they proceeded with depositions on liability), 22 (the parties' joint status letter providing further updates on Blasetti's Worker's Compensation Board hearing), 24 (court order extending deadlines for discovery on liability). On October 17, 2023, Schindler filed a pre-motion letter requesting leave to move for summary judgment on just the issue of liability, Dkt. 43, and the Court approved the request, Dkt. 45. Schindler thus moved for summary judgment on December 8, 2023, Dkt. 47 ("Motion"), Blasetti

filed her opposition on January 12, 2024, Dkt. 55 ("Opposition"), and Schindler replied two weeks later, Dkt. 58.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-movant must present more than a "scintilla of evidence." *Anderson*, 477 U.S. at 252. "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks omitted).

### III.  Discussion

In moving for summary judgment on Blasetti's negligence claim, Schindler first contends that Blasetti cannot demonstrate that Schindler had actual or constructive notice of the misleveling defect, and so cannot prevail under a traditional negligence theory.  Motion at 5-10.  Next, Schindler maintains that Blasetti also cannot prevail under the *res ipsa loquitur* doctrine because, according to Schindler, Blasetti cannot demonstrate (1) that the accident ordinarily would not occur in the absence of negligence or (2) that the accident occurred through no fault of her own. *Id.* at 11-14.  The Court addresses each set of arguments in turn.

**A.     Traditional Negligence Standard Under New York Law**

The Court considers first whether Schindler has demonstrated its *prima facie* entitlement to summary judgment on Blasetti's claim under a traditional negligence theory.  "Under New York law, which applies to this case, a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on [the] defendant's part as to [the] plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks omitted).  Where, as here, a company "has agreed to maintain an elevator in safe working condition, [it] owes passengers a duty to maintain the elevator and can be liable to a passenger for failure to correct conditions of which it had knowledge, or failure to use reasonable care to discover and correct a condition which it ought to have found." *Meade v. Otis Elevator Co.*, No. 15 Civ. 4822 (LTS), 2017 WL 6509259, at *6 (S.D.N.Y. Dec. 18, 2017) (internal quotation marks omitted); *see also Rogers v. Dorchester Assocs.*, 300 N.E.2d 403, 405-06 (N.Y. 1973) ("An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge

or failure to use reasonable care to discover and correct a condition which it ought to have found[.]"(citations omitted)).

That company "may establish *prima facie* entitlement to summary judgment by presenting competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that even if a defect existed, the company did not have actual or constructive notice of any such defect." *Meade*, 2017 WL 6509259, at *6 (internal quotation marks omitted). Upon this showing, "the plaintiff must come forward with evidence capable of showing that the defendant either: (1) created the defect; or (2) had actual or constructive notice of the defect." *Id.* (internal quotation marks omitted). To demonstrate actual notice, a plaintiff must present evidence that the defendant was "in fact, aware of the dangerous condition." *Nussbaum v. Metro-North Commuter R.R.*, 994 F. Supp. 2d 483, 495 (S.D.N.Y. 2014) (internal quotation marks omitted). And to establish constructive notice, a plaintiff must offer evidence that the dangerous condition was "visible and apparent" and "exist[ed] for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *Id.* at 494 (internal quotation marks omitted).

Here, it is undisputed that on March 12, 2021—just twelve days before the incident—the subject elevator passed a routine inspection test performed by the NYC DOB without any recorded deficiencies. Deft. 56.1 Stmt. ¶ 22; Bryan Declaration, Exh. K (NYC DOB record). It is also undisputed that on April 21, 2021—less than a month after the incident—the subject elevator passed its annual Category 1 inspection, again without any defects found. Deft. 56.1 Stmt. ¶ 21; *see also* Bryan Declaration, Exh. J (2021 Category 1 inspection result).

The record further shows that Bliss, Schindler's resident mechanic, performed a routine visual inspection of the subject elevator on March 15, 2021, *see* Bryan Declaration, Exh. G

9

(preventative maintenance tickets), just nine days before the accident, and Bliss testified that he "didn't know there was an issue back then [*i.e.*, prior to March 24, 2021]," Bliss Dep. Tr. at 46:13-18.  And while Bliss had no independent recollection of the precise work he performed on the elevator that day (or any of the other days on which tickets for the preventative maintenance he performed were generated), *id.* at 65:13-24, 67:4-7, 70:8-11, 71:14-17, 72:2-5, 72:16-22, 73:4-6, 73:16-18, there is also no indication in the record that any of these visual inspections revealed problems with the elevator's leveling mechanism.  Significantly, Blasetti herself testified that she was unaware of any instances of the subject elevator being misleveled prior to her own accident or of any problems with the elevator otherwise.  Deft. 56.1 Stmt. ¶¶ 9, 10; *see also* Blasetti Dep. Tr. at 32:21-24.

In light of this record evidence, Schindler has made a *prima facie* showing that the subject elevator was functioning properly before and after the incident and that, even if a defect existed, the company did not have actual or constructive notice of it.  *See Swanson v. Schindler Elevator Corp.*, No. 21 Civ. 10306 (JMF), 2024 WL 967331 at *4 (S.D.N.Y. Mar. 6, 2024) (concluding that the defendant elevator company made a *prima facie* showing that the elevator was functioning properly before and after the accident where the preventive inspection six days before the accident revealed no leveling issues and the fulltime on-site elevator mechanic testified "that he had no recollection of any accidents due to misleveling" in the month of the plaintiff's accident); *Green v. Schindler Elevator Corp.*, No. 19 Civ. 4677 (LLS), 2022 WL 4484542, at *4 (S.D.N.Y. Sept. 27, 2022) (concluding that the defendant elevator company had demonstrated its *prima facie* entitlement to summary judgment where the defendant's service records showed "no report of an issue with the stopping or leveling of the elevator for the six months prior to the accident," the plaintiff "herself reported to have never experienced any prior issues with the leveling of the

10

elevator," and there were no reports of misleveling after the plaintiff's accident); *Isaac v. 1515 Macombs, LLC*, 922 N.Y.S.2d 354, 355-56 (1st Dep't 2011) (explaining that the defendants had "demonstrated their prima facie entitlement to summary judgment" in part by showing that "the elevators had been inspected by the Department of Buildings on October 26, 2005, about a week before the accident, and passed inspection").

In attacking the sufficiency of this showing, Blasetti points to the dearth of evidence indicating that Schindler actually performed the weekly inspections and maintenance on elevator leveling as required under Schindler's Maintenance Agreement with Montefiore, as well as the subject elevator's extensive history of often failing NYC DOB inspections from November 2006 to March 2020 and annual Category 1 inspections from 2007 to 2018. Opposition at 6-12; *see* Pardo Declaration, Exh. C. But neither the frequency with which Schindler inspected and maintained the subject elevator nor reports of failed inspections far predating the accident negates the undisputed record evidence demonstrating the elevator's functionality closely before and after the accident and Schindler's lack of actual or constructive notice of any defect.

In sum, to defeat Schindler's summary judgment motion to the extent Blasetti relies on a traditional negligence theory, Blasetti must offer evidence that Schindler created the defect or had actual or constructive notice of it. She has not done so.[3] Nor is the Court able to discern from its independent assessment of the record any basis to charge Schindler with creating the misleveling defect or having actual or constructive notice of that defect. In the absence of evidence from which

---

[3] It is not clear whether Blasetti in fact intends to proceed under such a traditional negligence theory. The Complaint is devoid of any allegations suggesting that Schindler created, was aware of, or should have been aware of the defect. *See generally* Complaint. And likewise, in her Opposition, Blasetti points to no evidence that Schindler was actually or constructively aware of the subject elevator's misleveling; she argues that Schindler failed "to show that it maintained the elevator in a safe operating condition and had no actual or constructive notice," Opposition at 3, and that "res ipsa loquitur applies to this case," *id.* at 16.

11

a reasonable jury could make such findings, the Court grants Schindler's motion for summary judgment on Blasetti's claim to the extent it is based on a traditional theory of negligence.

B.     *Res Ipsa Loquitur*

Blasetti contends that even without direct proof that Schindler breached its duty of care, her negligence claim survives summary judgment under the doctrine of *res ipsa loquitur*. *See Aponte v. Bronx Pres. Hous. Dev. Fund Corp.*, 162 N.Y.S.3d 38, 40 (1st Dep't 2022) (denying summary judgment on *res ipsa loquitur* grounds notwithstanding the defendants' "argument that they did not have notice of any misleveling condition"). On this point, the Court agrees.

"*Res ipsa loquitur* is a doctrine that allows two elements of negligence, duty of care and breach, to be inferred from the very nature of the accident, even without direct evidence of how any defendant behaved." *Skidd v. JW Marriot Hotels & Resorts*, No. 06 Civ. 1554 (DAB), 2010 WL 2834890, at *3 (S.D.N.Y. July 8, 2010) (citing *Rossetti v. Bd. of Educ. of Schalmont Cent. Sch. Dist.*, 716 N.Y.S.2d 460, 462 (3d Dep't 2000)); *accord Dermatossian v. N.Y.C. Transit Auth.*, 492 N.E.2d 1200, 1204 (N.Y. 1986) ("When the [*res ipsa loquitur*] doctrine is invoked, an inference of negligence may be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence." (internal quotation marks omitted)). "Since the time [the doctrine] was crafted by Baron Pollock in *Byrne v. Boadle*, 2 H. & C. 722, 159 Eng. Rep. 299 (1863), in which a now-legendary barrel of flour rolled out of a window, its use has expanded to cover a myriad of accidents and incidents." *St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302 (2d Cir. 1990). "But before a case can be submitted to a jury in New York on a *res ipsa loquitur* theory, there are three requirements that must be met." *Id.* The plaintiff must demonstrate that "(1) the event was of a kind which does not ordinarily occur in the absence of someone's

negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of plaintiff." *Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 157 (2d Cir. 2003) (citing *Corcoran v. Banner Super Mkt., Inc.*, 227 N.E.2d 304, 305 (N.Y. 1967)). While Schindler does not dispute that the subject elevator was within its exclusive control, Schindler argues that Blasetti cannot as a matter of law prove the first and third elements of the doctrine. Motion at 11-14.

First, Schindler submits that Blasetti cannot establish that the accident is of a kind that ordinarily occurs in the absence of negligence because Schindler "can provide an explanation as to how the accident can occur without any negligence on its part." Motion at 11. Schindler misconstrues the law. The mere existence of other possible causes of the accident is not fatal to Blasetti's claim, as Blasetti is not required to "conclusively eliminate the possibility of all other causes" to warrant submission of her case to a jury on a *res ipsa loquitur* theory. *Linwood v. Schindler Elevator Corp.*, No. 16 Civ. 1020 (LAK) (RWL), 2019 WL 5722110, at *9 (S.D.N.Y. Jan. 25, 2019) (internal quotation marks omitted), *report and recommendation adopted*, No. 16 Civ. 1020 (LAK), Dkt. 97 (S.D.N.Y. Apr. 15, 2019); *accord Kambat v. St. Francis Hosp.*, 678 N.E.2d 456, 458 (N.Y. 1997) ("To rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury."). Rather, she need only provide evidence that affords a "rational basis for concluding that it is more likely than not that the injury was caused by [Schindler]'s negligence." *Linwood*, 2019 WL 5722110, at *9 (internal quotation marks omitted); *accord Kambat*, 678 N.E.2d at 458 ("It is enough that the evidence supporting the three conditions afford a rational basis for concluding that it is more likely than not that the injury was caused by defendant's negligence." (internal quotation marks omitted)); *Ezzard v. One E. River Place Realty Co., LLC*, 8 N.Y.S.3d 195, 199 (1st Dep't 2015) (same); *Swanson*, 2024 WL 967331,

13

at *5 (noting that "'the controlling law of this Circuit' does not require [the plaintiff] to 'eliminate with certainty all other possible causes or inferences'" (quoting *Meade*, 2017 WL 6509259, at *7-8)).

To that end, Blasetti has proffered Carrajat's expert opinion that an elevator generally does not mislevel by more than half an inch absent negligence, given that the most common causes of such misleveling—"sensor failure, a loss of position, a door lock strike and door zone device malfunction"—involve mechanisms typically subject to routine maintenance and inspection, and further that Schindler's scant records provide no basis to determine the precise nature of the maintenance performed on the subject elevator.  *See* Carrajat Report at 2-3, 5.  Moreover, Blasetti claims (and the Court credits for the purposes of evaluating the instant motion) that the elevator was misleveled by a drastic three to four inches when she tripped and fell.  Blasetti Dep. Tr. at 36:13-19; *see also* Halpern Dep. Tr. at 14:13-21 (testifying, based on his review of the surveillance video, that the elevator was misleveled by about two or three inches); Carrajat Dep. Tr. at 51:4-6 (testifying that he was "looking at a video showing an elevator mis[]level [by] 3 to 4 inches").

Considering this evidence against the backdrop of "long established jurisprudence of New York courts in the Appellate Division's First Department (where [Blasetti]'s accident occurred and this Court sits) that elevator malfunctions like misleveling do not occur in the absence of negligence" and the common sense reasoning of courts in this District "that an adequately maintained elevator should not have problems as such as coming to an unexpected and abrupt stop or having its doors closing on and striking its passengers," *Swanson*, 2024 WL 967331, at *5 (internal quotation marks, citations, and brackets omitted), the Court declines to find at this juncture that Blasetti cannot as matter of law establish Schindler's negligence under the first element of the *res ipsa loquitur* inquiry.  *See Aponte*, 162 N.Y.S.3d at 40 ("This Court has long

recognized that an elevator misleveling does not occur in the absence of negligence, 'giving rise to the possible application of res ipsa loquitur'" (quoting *Ezzard*, 8 N.Y.S.3d at 198; other citations omitted)).

To be sure, Schindler's expert, Halpern, has opined that the same maintenance and inspection records evaluated by Carrajat show that the maintenance of the subject elevator comported with industry standards. *See* Halpern Report at 3. But such contrary evidence only highlights the existence of a genuine dispute precluding summary judgment. Indeed, if Blasetti's "injury was not, in fact, the result of a malfunction attributable to negligence, [Schindler] is free to offer evidence to that effect at trial." *Stone*, 353 F.3d at 161.

Next, Schindler insists that Blasetti cannot prevail under the third element of the *res ipsa loquitur* doctrine because she contributed to her own accident by failing to look down at the ground as she exited the elevator. Motion at 12-13. But a properly functioning elevator does not require its passengers to study the floor to ensure a safe exit, and the Court declines to find as a matter of law that Blasetti's failure to do so constitutes a voluntary action that renders her a contributor to her own accident. Such a determination would be no less absurd than faulting Mr. Byrne for failing to look up in time to dodge the famed barrel of flour.

Moreover, the New York Supreme Court's Appellate Division, First Department, has made clear that in elevator misleveling cases, the proper inquiry on the third element of the *res ipsa loquitur* doctrine concerns "whether the plaintiff acted in some manner that affected the elevator and caused the misleveling to occur." *Ezzard*, 8 N.Y.S.3d at 199; *see also Aponte*, 162 N.Y.S.3d at 40 ("[T]he fact that plaintiff might not have been watching where she was going does not preclude application of res ipsa loquitur with regard to the misleveling of the elevator, to which she did not voluntarily contribute[.]"). As Schindler has not proffered any evidence even

15

suggesting that Blasetti contributed to the subject elevator's misleveling, the Court is not prepared at this stage to preclude a jury from deciding whether Blasetti has satisfied the third element of the *res ipsa loquitur* doctrine.

Accordingly, the Court denies Schindler's motion for summary judgment on Blasetti's negligence claim insofar as that claim is based on the *res ipsa loquitur* doctrine.

### IV. Conclusion

For the foregoing reasons, the Court grants Schindler's motion for summary judgment as to Blasetti's claim under a traditional negligence theory and denies the motion as to Blasetti's claim based on the *res ipsa loquitur* doctrine. The Court denies as moot Schindler's request for oral argument. *See* Dkt. 61. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 46 and 61.

SO ORDERED.

Dated: June 27, 2024
New York, New York

JOHN P. CRONAN
United States District Judge